IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDRZEJ WOJTKIELEWICZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 11 C 4737 |
| | ) |
| CHICAGO POLICE OFFICER MICHAEL | ) |
| ORLANDO AND CITY OF CHICAGO, | ) |
| | ) |
| Defendants. | ) |

# **OPINION AND ORDER**

This case is now before the court for ruling on the motions *in limine* of plaintiff Andrzej Wojtkielewicz and defendant Michael Orlando. The claims against defendant City of Chicago have been bifurcated pursuant to the stipulation of the parties. *See* Order dated Sept. 20, 2012 [Docket Entry 39]. Defendant Chris Anderson was voluntarily dismissed with prejudice on February 14, 2013 [Docket Entry 45].

Plaintiff seeks to bar the testimony of defendant's expert witness, Chris W. Lawrence. Lawrence would give expert testimony concerning police procedures and reaction time for human performance--specifically how long it

takes for a police officer to draw and fire a weapon when faced with a bodily threat.

Rule 702 of the Federal Rules of Evidence provides for testimony by experts when a court finds and concludes that "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue" and the testimony meets the other standards stated in the rule. In this case the parties have stipulated, in part, that the facts and issues are as follows:

> 5. Plaintiff, afer being pursued by police officers, pulled over to the right-hand emergency parking lane on Interstate 90, [and] stopped his SUV. Officer Chris Anderson attempted to physically extract the plaintiff from his SUV. The police officers at the scene maintain that the plaintiff put his SUV in reverse and drove back about 5 feet. He then placed the SUV in drive, squealed tires, and drove forward. Defendant Orlando maintains that the plaintiff was driving in his direction and Orlando was in fear of his life and, therefore, shot the plaintiff. No tire marks are visible in any police crime scene photograph in the vicinity of the SUV. The plaintiff, afer stopping his vehicle, placed the SUV in "Park," rolled down the driver's door window of the SUV and placed his hands in the air. While sitting in the SUV with his hands in the air, he saw a person in a police uniform approaching from the front along the right side of the vehicle. When that person in the police uniform was basically in the area of the right front fender and toward the rear of the right front wheel well, the plaintiff saw that person in the police uniform fire a shot that penetrated the windshield and struck the plaintiff in the

> chest.  There is no question that defendant Orlando shot the plaintiff.  The questions are:  (a) was plaintiff trying to run down Orlando when Orlando fired the shot?  (b) exactly where was Orlando when he fired the shot?  (c) does the physical evidence support the plaintiff's version or the version of the police officers, including Orlando?
> 	6. . . . The question for the jury will be whether Officer Orlando reasonably believed he was in fear of death or great bodily harm to himself or officer Anderson under the totality of the circumstances, even if his belief was mistaken.

Expert testimony is by its nature circumstantial evidence.  The jury in this case does not require circumstantial evidence--in the form of an expert's opinion as to how quickly an ordinary police officer reacts to bodily threats by drawing and firing a weapon--in order to understand the facts or to determine what happened in this case, even if such data can be reliably gathered and disclosed.  The primary factual issue in this case appears to be whether Orlando reasonably perceived a bodily threat, not how quickly--or necessarily appropriately--he responded to any such threat that existed.  Lawrence's proposed testimony as to the range of time it takes police officers to decide to fire a weapon would not be helpful to the jury.  Lawrence's testimony does not consider all the particular factors that would have gone into Orlando's decision to fire his revolver and Lawrence certainly cannot testify to establish what the actual circumstances were

that night. There will be direct testimony of plaintiff and several police officers on the scene as to what happened, as well as testimony concerning the location of the officers, the plaintiff, and the vehicles. Average police officer reaction time, even if scientifically developed, is not a necessary or useful factor that need be added to the evidence in this case. Plaintiff's motion to exclude the testimony of Chris Lawrence is granted.

Defendant does not oppose plaintiff's Motion 2 to prohibit defendant from making any mention of the existence of deportation proceedings pending against plaintiff. Accordingly, that motion is granted.

Plaintiff does not oppose defendant's motions *in limine* identified as numbers 1, 3, 4, 6, 7, 8, 9, 11, 12, 13, and 14.

Defendant does not oppose the testimony of plaintiff's expert John Larson providing a reconstruction of the shooting incident. However, defendant states, and plaintiff does not oppose, limiting this testimony of Larson to a reconstruction of the shooting only without any statement about the police investigation of the shooting.

Accordingly, defendant's Motions 1,3,4,6,7,8,9,11,12, 13, and 14 are granted without objection.

Defendant believes plaintiff will offer evidence that was gathered by an investigation of the shooting incident conducted by the Chicago Police Department and the Independent Police Review Authority in the form of exhibits and documents created as a result of the investigation. Defendant seeks to bar any evidence or arguments relating to the conduct or quality of the investigation, for which he was not responsible, as having no bearing on the central issue in the case. Plaintiff has made no claim that relates to the adequacy of the investigation. Defendant's Motion 2 is granted.

Plaintiff's objections to defendant's Motion 5 to bar any testimony or argument of a conspiracy to cover up for colleagues through a code of silence or Motion 10 that any non-defendant engaged in misconduct, are not fully explained or argued. Defendant's motions 5 and 10 are granted.

The Final Pretrial Order contains some objections by defendant as to plaintiff's proposed exhibits. With the understanding that statements by witnesses who will testify may only be used for impeachment or to refresh recollection and need not be produced at this time, the parties shall deliver to chambers copies of any other exhibits to which objection is stated in the Final Pretrial Order.

The parties are cautioned to use the same numbering for exhibits as stated in the Final Pretrial Order throughout the pretrial proceedings and the trial.

IT IS THEREFORE ORDERED that plaintiff's [43] [44] and defendant's [42] motions *in limine* are granted. Within 7 days, the parties shall deliver to chambers copies of exhibits for which objections have been raised.

ENTER:

_____
UNITED STATES DISTRICT JUDGE

DATED: MARCH 12, 2013